UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

MICHAEL DELNER CRUMPTON,

        Plaintiff,

v.

BARRY COUNTY JAIL MEDICAL
STAFF et al.,

        Defendants.
_____/

Case No. 1:22-cv-1071

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff sues several defendants for their deliberate indifference to his serious medical need.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, Plaintiff's Eighth Amendment claims against the individual Defendants—Drinkert, Crisenberry, Rewerts, and Casper (the MDOC Defendants)—are properly dismissed for failure to state a claim. Plaintiff's state law claims against the MDOC Defendants are likewise properly dismissed because the Court declines to exercise supplemental jurisdiction over them.

Even though Plaintiff has failed to state a claim against the MDOC Defendants, he has alleged facts that suffice to state an Eighth Amendment claim—just not against the named MDOC Defendants. The Court will allow Plaintiff 28 days to file an amended complaint identifying the individuals who exhibited the deliberate indifference to his alleged serious medical need as discussed below.

Further, Plaintiff's allegations suffice to state a claim against Barry County. Nonetheless, under Federal Rule of Civil Procedure 21, the interests of justice would be served by severing Plaintiff's claims against Barry County from Plaintiff's claims against the MDOC Defendants.

## Discussion

### I. Motion to Appoint Counsel

Plaintiff has filed a motion seeking the appointment of counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 7) will, therefore, be denied.

## II.   Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Carson City Correctional Facility (DRF) in Carson City, Michigan. The events about which he complains occurred at that facility, the Charles E. Egeler Reception & Guidance Center (RGC) in Jackson, Michigan, and the Barry County Jail in Hastings, Michigan. Plaintiff sues DRF Warden R. Rewerts and DRF Health Unit Manager Unknown Casper; RGC Medical Provider Ronald Drinkert and RGC Health Unit Manager J. Crisenberry; and the "Barry County Jail Medical Staff."

Plaintiff alleges that he was arrested on March 29, 2021,[1] and was taken to the Barry County Jail where he told medical staff that his left ring finger was dislocated or broken. The dislocation occurred a month or two before his arrest.[2] Plaintiff states that medical staff told him that he could not receive any medical attention until he was transferred to RGC.

---

[1] On November 18, 2020, Plaintiff entered a guilty plea to a charge of possession of methamphetamine. (Plaintiff's App. For Leave to Appeal, ECF No. 1-1, PageID.33); *see also State of Mich. v. Crumpton*, No. 20-000728-FH (Barry Cnty. Cir. Ct.), Case Details, https://micourt.courts.michigan.gov/case-search/court/C05 (Search Last Name "Crumpton," First Name "Michael," select Case ID 2020-0000000728-FH, select "Events") (last visited Apr. 18, 2023). Plaintiff entered his plea pursuant to a *Cobbs* agreement that called for a sentence of "time served" based on the time Plaintiff spent in pretrial detention prior to his plea. (Plaintiff's App. For Leave to Appeal, ECF No. 1-1, PageID.33.) Plaintiff was released pending sentencing. Plaintiff failed to appear for his January 6, 2021, sentencing. That cost him the *Cobbs* agreement sentence and earned him a bench warrant. Plaintiff was arrested on the bench warrant on March 29, 2021. He was jailed pending his sentencing hearing. The court sentenced Plaintiff to 3 years, 2 months to 10 years imprisonment. Plaintiff is also serving other sentences imposed after the methamphetamine sentence following his guilty pleas to other offenses in other Barry County Circuit Court and Kalamazoo County Circuit Court criminal proceedings. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=271800 (last visited Apr. 18, 2023). Plaintiff will be eligible for parole on April 8, 2024.

[2] The timing of the injury is not revealed in the allegations in Plaintiff's complaint. Instead it is revealed in the documents Plaintiff attaches to his complaint, specifically the medical history Plaintiff provided to his surgeon. (ECF No. 1-1, PageID.21–26.) The Court may consider documents that are attached to a *pro se* complaint when evaluating whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the

On April 7, 2021, Plaintiff was sentenced to 38 months to 120 months and, on April 21, 2021, he was transferred to RGC. Once there, during medical intake screening, Plaintiff told Defendant Drinkert about his finger injury. Defendant Drinkert responded by instructing Plaintiff to fill out a health care request.

Plaintiff submitted a health care request on April 23, 2021. Plaintiff attached his initial health care request to the complaint. (ECF No. 1-1, PageID.14.) Plaintiff's request was somewhat disingenuous in that he states "my ring finger on my left hand is broken and needs to be x-rayed and placed in a case or sling ASAP before it heals broken and bent." (*Id.*)[3]

The form indicates that Plaintiff was "seen in clinic" on April 25, 2021. Plaintiff does not allege, and the document does not disclose, if any treatment was provided on that date. (*Id.*)

Plaintiff reports that he submitted another healthcare request on May 8. Plaintiff does not provide his May 8 request. He alleges that, on May 10, 2021, he received a response from Melissa Schultz, RN, stating that because of the COVID-19 pandemic, normal operations for clinics had

---

attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3, n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)).

[3] At that point, however, many weeks had passed since Plaintiff had injured his finger and, to the extent the finger had healed "broken and bent," it probably had healed that way because of Plaintiff's inattention, not Defendants' inattention. The Court accepts Plaintiff's complaint allegations as true. The Court likewise accepts Plaintiff's statements in the attached documents as true. In this instance, however, the statements Plaintiff makes in the health care request are inconsistent with other statements he makes regarding the timing of the injury in recounting his medical history to the surgeon. This observation regarding responsibility for the "broken and bent" condition of Petitioner's finger is not material to the Court's preliminary review of the complaint.

been suspended and that if Plaintiff's symptoms became urgent he should contact health care immediately.

On May 18, 2021, Plaintiff's left ring finger was x-rayed—perhaps as a follow-up to his April 25 clinic visit—and on May 20, 2021, a nurse practitioner informed Plaintiff that he had tenosynovitis for which there was no plan of action. The x-ray results indicated that there were "no signs of fracture, dislocation, osseous or joint pathology." (ECF No. 1-1, PageID.16.) Plaintiff characterizes the healthcare response as a misdiagnosis. Given the response to his condition at his next placement, that characterization appears to be accurate.

Plaintiff states that the misdiagnosis resulted in dangerously substandard treatment. On May 26, 2021, Plaintiff filed a grievance regarding the lack of proper treatment. Plaintiff states that the investigation summary in the grievance response indicated that antifungal powder had been ordered for the skin and that follow-up care had been ordered at DRF because Plaintiff had been transferred there on June 17, 2021. That Step I grievance response was authored and signed by Defendant J. Crisenbery, the RGC Health Unit Manager, on July 13, 2021. Plaintiff does not allege any other involvement by Defendant Crisenbery

On July 29, 2021, DRF Physician Assistant Sperling referred Plaintiff to a hand specialist. Thereafter, on September 17, 2021, Plaintiff was referred to "elite hand surgery specialist Gregory Knoll, MD." (Compl., ECF No. 1, PageID.6.) Dr. Knoll informed Plaintiff that he had chronic joint dislocation and, because of the significant passage of time following the injury, his joint was permanently damaged. Dr. Knoll recommended surgery to correct the deformity. Dr. Knoll noted that Plaintiff would "require intensive post-op OT once the K-wires [were] removed . . . ." (ECF No. 1-1, PageID.23.)

5

On November 17, 2021, surgery was performed by Dr. Knoll. On November 30, 2021, the sutures were removed and Plaintiff's finger was evaluated. On February 8, 2022, the pin was removed from Plaintiff's joint. Plaintiff was next seen by Dr. Knoll on May 11, 2022. Dr. Knoll asked how occupational therapy was going. Plaintiff explained that occupational therapy had been denied by the MDOC, specifically "by Lansing." (*Id.*, PageID.7.) Dr. Knoll stated that without occupational therapy, Plaintiff was unlikely to recover normal usage of his finger and that he might be required to have another surgery to permanently fuse the joint.

Although Plaintiff names DRF Warden Rewerts and DRF HUM Casper, he does not allege any facts that connect those Defendants to the denials of care for his injured finger. Indeed, other than listing them in the caption and the list of parties, their names do not appear in the complaint.

While Plaintiff was at DRF, he filed another grievance regarding the failure to provide medical care for his finger. He attaches a page from the Step II appeal of the denial of that grievance to the complaint. Because Plaintiff does not include the first page or the initial response, it is not possible to discern the precise content of the initial grievance or the identity of the initial respondent. Plaintiff's statement of the reasons for appeal, however, indicates that he was again grieving the failure to properly diagnose him at RGC. (ECF No. 1-1, PageID.17.) Defendant Rewerts responded to that grievance at the second step. Presumably the response was a denial because Plaintiff appealed the Step II response as well.

Plaintiff claims that Defendants were all deliberately indifferent to his serious medical need in violation of the Eighth Amendment. Plaintiff also alleges that Defendants were negligent. Plaintiff seeks compensatory and punitive damages, as well as costs and declaratory relief.

**III.   Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

7

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). Accordingly, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

### A. Objective Component

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is

not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Based on the documents Plaintiff has provided, the Court concludes that Plaintiff has sufficiently alleged the objective component of an Eighth Amendment medical deliberate indifference claim.

### B. Subjective Component

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

9

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

Moreover, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis amounted only to negligence given that the prisoner also complained of symptoms "which could have been consistent with [the doctor's] diagnosis"). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Barry County Jail Medical Staff

Plaintiff claims that the Barry County Jail Medical Staff at the Barry County Jail violated his rights under the Eighth Amendment when they told him that he could not get any medical attention for his dislocated finger until he was transferred to RGC. Neither the Barry County Jail nor the Jail's Medical Staff as a group are entities subject to suit under § 1983. Liberally construing Plaintiff's complaint, the Court concludes that Plaintiff intended to name Barry County as a defendant. The Court will direct the Clerk to substitute in Barry County as a defendant in place of the Barry County Jail Medical Staff.

A local government such as a county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a county may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020); *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508–509.

Construed liberally, Plaintiff's factual allegations suggest that the county has a policy of simply declining to provide medical care for convicted defendants awaiting sentencing and transport to the MDOC. Plaintiff alleges that execution of that policy resulted in at least some part of the injury to his finger and certainly a continuation of the pain. Because Plaintiff has alleged facts that suggest the county has an unconstitutional policy of delaying care and that, as a result, he suffered injury, he has adequately stated an Eighth Amendment claim against Defendant Barry County.

    **2.**    **RGC—Defendants Drinkert and Crisenberry**

Plaintiff alleges that Defendant Drinkert conducted Plaintiff's medical intake screening at RGC. Drinkert instructed Plaintiff to fill out a health care request regarding his finger. Plaintiff did so. There are no other facts alleged regarding Defendant Drinkert. Although Plaintiff complains about the response of RGC health care staff thereafter—in failing to provide prompt treatment and

12

in misdiagnosing his condition—he does not state any facts that suggest Drinkert played a role in those actions (or inactions). The Court concludes that Plaintiff has failed to allege that Defendant Drinkert was aware of a substantial risk of serious harm to Plaintiff because of the finger injury and that Drinkert disregarded that risk. Therefore, Plaintiff's claims against Defendant Drinkert will be dismissed.

Plaintiff's allegations against Defendant Crisenberry likewise fall short. Per Plaintiff's allegations, the only role that Defendant Crisenberry played in Plaintiff's care was responding to Plaintiff's grievance regarding the misdiagnosis of his condition. Based on the medical record she reviewed, she concluded that the care was appropriate; but she also noted that at the time of her review, Plaintiff had transferred to DRF. There is nothing in Defendant Crisenberry's response that suggests that she was aware of a substantial risk of serious harm to Plaintiff because of the finger injury and that Crisenberry disregarded that risk. She simply noted that at the time of her review, Plaintiff was in the capable hands of care providers at DRF. Therefore, the Court concludes that Plaintiff has failed to allege facts that show Defendant Crisenberry was deliberately indifferent to Plaintiff's serious medical need.

Plaintiff might suggest that Defendant Crisenberry is liable for the lack of care at RGC because she is the health unit manager, i.e., that she is responsible for everything that occurs there because of her supervisory role. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based

upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege active misconduct on Defendant Crisenberry's part; therefore, he has failed to state a claim against Defendant Crisenberry and any claims against her will be dismissed.

Although Plaintiff's allegations against the named RGC Defendants fall short, the allegations do support a determination that someone was deliberately indifferent to his serious medical need. Plaintiff alleges delay in care that resulted in significant pain and an inexplicable misdiagnosis. But Plaintiff does not name those persons who delayed care or improperly diagnosed his condition as Defendants. The Court will permit Plaintiff 28 days to file an amended complaint naming as Defendants the persons who he alleges have demonstrated the requisite deliberate indifference.

### 3. DRF Defendants—R. Rewerts and Unknown Casper

Plaintiff's allegations reveal that the care he received at DRF was far more effective—at least to a point. Plaintiff was properly diagnosed and underwent surgery for his finger. The problem arose, however, months later when the "pin" was removed. At that point, according to Plaintiff, he should have received occupational therapy. That treatment, however, was "denied by Lansing." (Compl., ECF No. 1, PageID.8.) As a result, Plaintiff's finger is permanently damaged.

Plaintiff names DRF Warden R. Rewerts and DRF Health Unit Manager Unknown Casper as Defendants. Neither Defendant is mentioned in the factual allegations of the complaint. Only

Defendant Rewerts is mentioned in the attached documents and, even then, he is only shown to be the respondent at the second step of the grievance process.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Because Plaintiff completely fails to mention Defendants Casper and Rewerts in the body of his complaint, his allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 8 (requiring "a short and plain statement of

the claim showing that the pleader is entitled to relief"). Moreover, to the extent Plaintiff intended to impose liability on Casper or Rewerts as supervisors of persons who participated directly in the unconstitutional conduct, there is no such supervisory liability under § 1983. Similarly, to the extent Plaintiff sought to impose liability on Defendant Rewerts because he responded to Plaintiff's grievance at the second step, that claim also fails. In short, any claims against Defendants Rewerts or Casper are properly dismissed.

But, once again, even though Plaintiff's allegations do not support a claim of deliberate indifference on the part of the named Defendants, the facts alleged at least suggest that the individual from Lansing who denied Plaintiff's request for occupational therapy may have been aware of the risk to Plaintiff in the absence of that treatment but consciously disregarded that risk. Accordingly, the Court will permit Plaintiff 28 days to file an amended complaint naming as Defendants the person or persons who he alleges have demonstrated the requisite deliberate indifference.

### IV.    State Law Claims Against the MDOC Defendants

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law negligence claim against the MDOC Defendants, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those

interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law negligence claims against the currently named MDOC Defendants will be dismissed without prejudice.

### V.     Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a).

Plaintiff's claims naturally break down into three distinct categories: (1) claims relating to Barry County's failure to provide treatment during April of 2021; (2) the failure of MDOC personnel at RGC to properly diagnose and treat Plaintiff's injury during April, May, and June of 2021; and (3) the failure of personnel at DRF to provide occupational therapy after surgery during

February, March, and April of 2022. There is certainly some connection between the categories—they all involve failure to address Plaintiff's finger injury. But each failure was unique to each correctional facility, with different persons involved and varied causes. And each failure was of a different character. Barry County's failure to provide any treatment to its temporary prisoner is quite different from RGC's misdiagnosis which is, in turn, quite different from DRF's specific decision to not provide occupational therapy.

It would not be impossible to continue the litigation with all of the claims and parties together; but the Federal Rules of Civil Procedure afford the Court some discretion to sever claims where that relief is warranted. Rule 21 of the Federal Rules of Civil Procedure provides that "[t]he court may . . . sever any claim against a party." FED. R. CIV. P. 21. In *Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018), the Sixth Circuit Court of Appeals explained:

> "The permissive language of Rule 21 permits the district court broad discretion in determining whether or not actions should be severed." *Johnson v. Advanced Bionics, LLC*, No. 2:08-CV-02376-JPM, 2011 WL 1323883, at *6 (W.D. Tenn. Apr. 4, 2011) (alteration omitted) (quoting *Alvion Properties, Inc. v. Weber*, No. 3:08-0866, 2009 WL 3060419, at *8 (M.D. Tenn. Sept. 23, 2009) ). . . . Courts consider a number of factors when determining whether to sever claims, including:
>
>> (1) whether the claims arise out of the same transaction or occurrence;
>>
>> (2) whether the claims present some common questions of law or fact;
>>
>> (3) whether settlement of the claims or judicial economy would be facilitated;
>>
>> (4) whether prejudice would be avoided if severance were granted; and
>>
>> (5) whether different witnesses and documentary proof are required for separate claims.
>
> *Productive MD, LLC v. Aetna Health, Inc.*, 969 F.Supp.2d 901, 940 (M.D. Tenn. 2013) (citation omitted).

*Parchman*, 896 F.3d at 733.

Considering those factors, the Court concludes that severing Plaintiff's claims against Barry County from the claims against the MDOC Defendants would serve the interests of justice. The Court finds that the claims are different enough from each other that trying them all together would not facilitate judicial economy. More importantly, settlement of the claims would be facilitated by severance. Plaintiff's claims against the MDOC Defendants will be subject to the Court's Prisoner Early Mediation (PEM) program; his claims against the county would not. Joining all the claims together would take the action outside of the PEM protocol. Therefore, the Court will sever Plaintiff's claims against Barry County from his claims against the MDOC Defendants.

The Court will direct the Clerk to open a new case for Plaintiff's claims against Defendant Barry County. The pleadings filed to date in the instant case shall appear in the docket of the new case as well. Plaintiff will not be required to pay filing fees in the new case. Plaintiff's MDOC-related claims, the claims for which the Court is permitting Plaintiff to file an amended complaint, may continue under the existing case number.

The Western District of Michigan has several rules designed to have related or cognate cases assigned to a single judge. *See* W.D. Mich. LCivR. 3.3.1(d), 3.3.2. Assigning related or cognate cases promotes judicial economy. The Court notes that the two cases that will result from the severance of Plaintiffs' claims are related cases under the Local Rules.

## **Conclusion**

The Court will deny Plaintiff's motion to appoint counsel. (ECF No. 7.)

The Court directs the Clerk to substitute Defendant Barry County for Defendant Barry County Jail Medical Staff. Plaintiff's allegations suffice to state an Eighth Amendment claim against Barry County. In the interests of justice, however, the Court will sever Plaintiff's claim against Barry County from his claims against the MDOC Defendants.

Plaintiff has failed to state a claim against the MDOC Defendants that he has named. The Court will dismiss those claims with prejudice and Plaintiff's related state-law negligence claims without prejudice.

But, Plaintiff has alleged facts that support an Eighth Amendment claim for deliberate indifference against other individuals who he has not named as Defendants. Plaintiff will be required to file an amended complaint within **28 days** naming the individual MDOC personnel who exhibited the deliberate indifference to his alleged serious medical need. Failure to timely file such an amended complaint may result in dismissal of this action.

The two cases that will result from the severance of Plaintiffs' claims are related cases under the Local Rules.

An order consistent with this opinion will be entered.


Dated:    April 24, 2023                            /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge