UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL DELNER CRUMPTON,

               Plaintiff,

v.

BARRY COUNTY JAIL MEDICAL
STAFF et al.,

               Defendants.

_____/

Case No. 1:22-cv-1071

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's amended complaint is before the Court for preliminary review. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

As explained in greater detail below, applying these standards, Plaintiff's claims against Barry County and Barry County Jail Health Care Provider Unknown Party #1 are properly dismissed as duplicative. Plaintiff's claims against the Bureau of Health Care Services are properly dismissed on grounds of immunity and for failure to state a claim. Additionally, Plaintiff's claims against Defendant #4, the "John Doe" Health Unit Manager at DRF, are properly dismissed for failure to state a claim.

## I.      Procedural History

In this action, Plaintiff initially sued five defendants: the Barry County Jail Medical Staff, Carson City Correctional Facility (DRF) Warden R. Rewerts and DRF Health Unit Manager Unknown Casper; Charles E. Egeler Reception & Guidance Center (RGC) Medical Provider Ronald Drinkert and RGC Health Unit Manager J. Crisenberry. By opinion and order entered April 24, 2023, the Court substituted the County of Barry as a defendant in place of the Barry County

Jail Medical Staff. (ECF Nos. 12 & 13.) The Court also severed Plaintiff's claim against the County

of Barry (*see id*.), and that claim is proceeding in a separate action: *Crumpton v. County of Barry*,

No. 1:23-cv-417 (W.D. Mich.).

Plaintiff's allegations against the remaining defendants all related to allegedly improper

medical care provided while Plaintiff was housed at MDOC facilities RGC and DRF. The Court

concluded that Plaintiff had failed to state a federal claim against those named defendants. The

Court dismissed Plaintiff's federal claims with prejudice and Plaintiff's state-law claims without

prejudice.

But the Court also concluded that the facts alleged by Plaintiff stated claims against other

referenced, but not identified, persons who participated in Plaintiff's treatment. Specifically, the

Court stated with regard to the Plaintiff's allegations regarding the events that occurred while

Plaintiff was housed at RGC:

> [T]he allegations . . . support a determination that someone was deliberately
> indifferent to his serious medical need. Plaintiff alleges delay in care that resulted
> in significant pain and an inexplicable misdiagnosis. But Plaintiff does not name
> those persons who delayed care or improperly diagnosed his condition as
> Defendants.

(Op., ECF No. 12, PageID.91.) Similarly, for the facts Plaintiff alleged regarding the events that

occurred while Plaintiff was housed at DRF, the Court stated:

> [T]he facts alleged at least suggest that the individual from Lansing who denied
> Plaintiff's request for occupational therapy may have been aware of the risk to
> Plaintiff in the absence of that treatment but consciously disregarded that risk.

(*Id*., PageID.93.) Rather than simply dismissing the complaint, the Court allowed Plaintiff 28 days

to file an amended complaint naming those persons as defendants.

## II.     Plaintiff's Amended Complaint

Plaintiff filed his first amended complaint on May 22, 2023. Plaintiff used the Court's

approved form. Section III of the form instructs plaintiffs to state the facts as follows:

3

> Describe how each defendant is personally involved. Include also the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes**. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.

(Am. Compl., ECF No. 15, PageID.105 (emphasis in original).) Plaintiff completely disregards the emphasized direction. His amended complaint is short on facts and long on legal argument, including citations to cases and statutes. (*See id.*, PageID.106–113.) Additionally, Plaintiff abandoned the factual recitation the Court had already indicated supported an inference of deliberate indifference in favor of legal argument.

Moreover, Plaintiff did not identify the persons against whom the Court had already determined that Petitioner had alleged sufficient facts. Instead, he described the role each played in his care. He describes the RGC personnel as healthcare providers who "responded to healthcare request[s], misread the x-rays taken on May 18th, 2021, misdiagnosed the Plaintiff[']s dislocated finger for tenosynovitis on May 20th, 2021 and further denied the Plaintiff proper medical treatment for a serious medical need . . . ." (*Id.*, PageID.111.) Plaintiff lists two "Doe" defendants from RGC: Defendant #2, a "John Doe" registered nurse and Defendant #3, a "Jane Doe" doctor/medical provider.[1] (*Id.*, PageID.104.)

Plaintiff also describes the individual at the MDOC Bureau of Health Care Services who, during the time Petitioner was housed at DRF, denied the request for occupational therapy. (*Id.*,

---

[1] Plaintiff also describes a third "Doe" defendant: Defendant #4, the "John Doe" Health Unit Manager at DRF. (Am. Compl., ECF No. 15, PageID.104.) That individual, however, was identified in the original complaint as "Unknown Casper." Plaintiff's federal claims against that defendant were dismissed for failure to state a claim and Plaintiff's state-law claims were dismissed without prejudice because the Court declined to exercise supplemental jurisdiction over them. (Op. and Order, ECF Nos. 12 and 13.) The Court will address Plaintiff's claims against the DRF Health Unit Manager below.

PageID.111.) With regard to that individual, however, rather than describing another "Doe" defendant, Plaintiff names the Bureau of Health Care Services. (*Id.*)

Plaintiff claims he cannot name those persons because he cannot afford to pay the per-page cost of copies such that he can obtain the relevant parts of his medical record.[2] Thus, the only purpose for permitting the amendment has been frustrated. And, instead of fulfilling that purpose, Plaintiff has muddied the waters by filling a complaint replete with legal argument, that names Barry County and Unknown Party #1, described as a "Barry County Jail Health Care Provider," as defendants even though there is presently a separate suit pending against Barry County, and that adds the Bureau of Health Care Services as a defendant.

### A.    Barry County Defendants

In naming Barry County and Barry County Jail Health Care Provider Unknown Party #1 as Defendants in his amended complaint, Plaintiff has entirely duplicated the lawsuit now pending as *Crumpton v. County of Barry*, No. 1:23-cv-417 (W.D. Mich.). Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356,

---

[2] The MDOC policy directive regarding access to health care records states that a "prisoner may receive copies of documents contained within their health record by making a specific written request to the appropriate Health Information Manager or designee and paying the required per-page fee, as set forth in OP 03.04.108-B 'Prisoner Access to Medical Records.'" MDOC Policy Directive 03.04.108 ¶ S (eff. Jul. 8, 2019). Plaintiff states that cost is $ 0.25 per page. (Am. Compl., ECF No. 15, PageID.111.)

361 (6th Cir. 1997). The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991). For that reason, the Court will dismiss the claims raised against Barry County and any individual Barry County Defendants in Plaintiff's recent amended complaint as duplicative. The dismissal is without prejudice to Plaintiff's claims pending in *Crumpton v. County of Barry*, Case No. 1:23-cv-417 (W.D. Mich.).

### B.      Defendant Bureau of Health Care Services

The Bureau of Health Care Services is an internal division of the MDOC which, in turn, is a department of the State of Michigan. *See, e.g.*, *Estate of Young v. Maring*, 70 F. App'x 256, 261 n.4 (6th Cir. 2003) (stating "[t]he MDOC Policy Directive places responsibility in the Bureau of Health Care Service (BHCS) 'for the Department's health services program' and directs BHCS to 'coordinate and monitor all services'"); *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (stating "the MDOC is 'an arm of the State of Michigan'"); MDOC Organizational Structure, https://www.michigan.gov/corrections/about/org-structure (last visited Sept. 6, 2023) (stating "[t]he Michigan Department of Corrections is one of the principal state departments . . . [and t]he Bureau of Health Care Services (BHCS) . . . is responsible for the coordination and monitoring of health care services for prisoners in Department correctional facilities").

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24

F.3d 823, 826 (6th Cir. 1994). The MDOC's Bureau of Health Care Services is a part of the MDOC and, likewise, is entitled to Eleventh Amendment immunity. *See, e.g.*, *Longwish v. Mich. Dep't of Corr. Bureau of Health Care Servs.*, No. 12-cv-53, 2012 WL 443023, at *1 (W.D. Mich. Feb. 10, 2012) ("As a division of the MDOC, the Bureau of Health Care Services also is immune"); *Sain v. Caruso*, No. 11-cv-63, 2011 WL 1458403, at *1 (W.D. Mich. Apr. 15, 2011) ("The Court also will dismiss Defendant Bureau of Health Care Services because it is immune.").

Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC and its Bureau of Health Care Services) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. The Court, therefore, will dismiss the Bureau of Health Care Services on the basis of sovereign immunity and for failure to state a claim because the Bureau is not a person subject to suit under § 1983.

While the Eleventh Amendment generally prohibits lawsuits against states (and a state's departments and the internal divisions of those departments) in federal court, under *Ex parte Young*, 209 U.S. 123, 155–56 (1908), a plaintiff can sue state officers in their respective official capacities for prospective injunctive relief. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). When challenging a state policy, the officer

sued must "have some connection" with the policy's enforcement or execution. *Ex parte Young*,

209 U.S. at 157. Even when a function is administered on a day-to-day level by local officials, a

state officer's supervisory authority can still make her a proper defendant under *Ex parte Young*.

*E.g.*, *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048–49 (6th Cir. 2015).

Although an official capacity suit against a state officer in the officer's official capacity

under *Ex parte Young* would not permit Plaintiff to seek damages, it would allow prospective

injunctive relief. Plaintiff specifically seeks such relief: "Plaintiff requests that this Court grant the

following relief . . . issue an injunction requiring that Defendants prison medical providers provide

occupational physical therapy to Plaintiff as requested by the outside hand specialist . . . ." (Am.

Compl., ECF No. 15, PageID.113.) Although that request for relief is not viable against the Bureau

of Health Care Services, it could state a claim against an individual officer of the Bureau in that

officer's official capacity. Accordingly, for purposes of Plaintiff's claim for prospective injunctive

relief, the Court will direct the Clerk to substitute Marti Kay Sherry, Administrator of the Bureau

of Health Care Services,[3] in the administrator's official capacity, in place of the Bureau of Health

Care Services.

### C.     Defendant #4, the "John Doe" Health Unit Manager at DRF

Plaintiff's amended complaint adds back in the DRF Health Unit Manager as a "John Doe"

defendant. That individual's identity, however, was known to Plaintiff as Unknown Casper when

Plaintiff filed the original complaint. (Compl., ECF No. 1, PageID.3.) Although Plaintiff named

Casper as a defendant, Plaintiff did not allege any facts relating to Casper's involvement in

---

[3] *See* MDOC Organizational Chart, available at https://www.michigan.gov/-/media/Project/
Websites/corrections/assets/Folder15/MDOC_Org_Chart_2.pdf?rev=ffb389ea34304a67bdc7ba5
172376914 (last visited Sept. 6, 2023).

Plaintiff's care. For that reason, the Court dismissed Plaintiff's claims against Casper. (Op., ECF No. 12, PageID.91–94.)

It is not clear why Plaintiff added the DRF Health Unit Manager back in as a defendant. The amended complaint does not include any new factual allegations specifically relating to that person. In that respect, the amended complaint represents a step backward from the original complaint. In the original complaint Plaintiff provided the identity of the defendant but alleged no facts regarding the defendant. In the amended complaint Plaintiff provides neither the identity nor any facts. For that reason, Plaintiff's claims against Defendant #4, the "John Doe" DRF Health Unit Manager, will be dismissed for failure to state a claim upon which relief can be granted.

### D.     Unidentified RGC Defendants

That leaves only the RGC unidentified defendants.

Taking Plaintiff's multi-page statement of facts, (Am. Compl., ECF No. 15, PageID.106–113), and stripping it of legal argument, and claims related to Barry County or the Bureau of Health Care Services, leaves only the first paragraph of PageID.111, which reads:

> The Plaintiff is indigent and cannot afford to pay the $.25 per page for a copy of his own medical records, so the exact names of MDOC Bureau of Health Services (RGC) who responded to healthcare request[s], misread the x-rays taken on May 18th, 2021, misdiagnosed the Plaintiff[']s dislocated finger for tenosynovitis on May 20th, 2021[,] and further denied the Plaintiff proper medical treatment for a serious medical need determined on September 17th, 2021[,] by hand specialist Gregory M. Knoll M.D. who performed the corrective surgery on November 17th, 2021[,] cannot be provided at this time. So through suggestion of legal materials obtained in the law library M.D.O.C. Bureau of Health Services has been named as a Defendant who is also the identity of the individual in "Lansing" who denied the request from the hand specialist for off-site occupational therapy to try and regain the motor functions of the finger. Due to the loss of the finger[']s mobility it affects the entire use of that hand and is not perman[e]ntly damaged which affects daily activities, the simple quality of life and has created a perman[e]nt life[-]long handicap. The specialist conveyed the fact that had this serious medical need been treated back when I was first lodged in Barry County Jail, I would have not had this life[-]long handicap.

(*Id.*, PageID.111.)[4] Those factual averments are so scant and provide so much less information than Plaintiff provided in the initial complaint that they are not sufficient to support an inference that the described defendants were deliberately indifferent to Plaintiff's serious medical need. The facts stated in the amended complaint, standing alone, fail to state a claim for violation of the Eighth Amendment.

Although the second iteration of Plaintiff's complaint against the MDOC defendants is insufficient, it remains apparent that Plaintiff is able to allege facts that state a claim. In lieu of inviting another amendment that might move even further away from stating a claim, the Court will accept the amended complaint as an amendment to the original complaint that does not supersede the original complaint. The operative complaint going forward will be the original and amended complaints together as modified by the Court's dismissals of parties in the April 24 2023, opinion and order (ECF Nos. 12 and 13) and this opinion and the accompanying order.

### Conclusion

Plaintiff's claims against Barry County and Barry County Jail Health Care Provider Unknown Party #1, as set forth in ECF No. 15, are dismissed as duplicative and, therefore, malicious. Plaintiff's claims against Defendant Bureau of Health Care Services are dismissed for failure to state a claim and on grounds of sovereign immunity. Plaintiff's claims against Defendant #4, the "John Doe" Health Unit Manager at DRF, are also dismissed for failure to state a claim.

---

[4] Those facts are repeated, in part, on PageID.109 where Plaintiff notes that he was "made to kite/request for medical treatment several times due to pain and discomfort during the course of three months 'due to CO[]VID[-]19 pandemic, normal operations for clinics had been suspended,' the misreading of x-rays, misdiagnosis of a dislocated finger for tenosynovitis, with the p[re]scription of antifungal powder . . . ." (Am. Compl., ECF No. 15, PageID.109.) All of these events occurred while Plaintiff was housed at RGC. (Op., ECF No. 12, PageID.80–83.)

Plaintiff raises a viable request for prospective injunctive relief that, under *Ex parte Young*, may be raised against a state officer in that officer's official capacity. The Court will direct the Clerk of Court to substitute Bureau of Health Care Services Administrator Marti Kay Sherry, in the administrator's official capacity, in place of the Bureau of Health Care Services for purposes of that claim. Considering the allegations in Plaintiff's original complaint, as supplemented by his allegations in ECF No. 15, the Court concludes that Plaintiff has also stated a claim against the two described, but unidentified, defendants from RGC. Therefore, this action will proceed against Bureau of Health Care Services Administrator Marti Kay Sherry, in the administrator's official capacity, as well as Unknown Parties #2 and #3, described, respectively, as a registered nurse and a doctor/medical provider at RGC.

Going forward, the operative complaint will consist of the original and amended complaints (ECF Nos. 1 and 15) together as modified by the Court's dismissals of parties in the April 24, 2023 opinion and order (ECF Nos. 12 and 13) and this opinion and the accompanying order.

An order consistent with this opinion will be entered.


Dated:    September 25, 2023                        /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge