UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DELNER CRUMPTON,

    Plaintiff,

v.

Case No. 1:22-cv-1071

Hon. Jane M. Beckering

MARTI KAY SHERRY, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Michael Delner Crumpton, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff's original complaint sued Barry County and a number of other defendants. *See* Compl. (ECF No. 1). Plaintiff filed an amended complaint (ECF No. 15). His remaining claims arose at the Carson City Correctional Facility (DRF) and the Charles E. Egeler Reception & Guidance Center (RGC). The remaining defendants are MDOC Bureau of Health Care Services (BHCS) Administrator Marti Kay Sherry (in her official capacity) and two unknown employees at RGC: John Doe (Unknown Party #2) (an MDOC Health Care Registered Nurse (RN)); and, Jane Doe (Unknown Party #3) (a doctor or medical provider). Opinion (ECF No. 26, PageID.156). The unidentified Doe defendants have not been served. This matter is now before the Court on defendant Sherry's motion for summary judgment for lack of exhaustion (ECF No. 44).

1

### I. The complaint and amended complaint

The operative pleading consists of the original and amended complaint as modified by the Court's orders. *See* Opinion at PageID.155.[1] The gist of plaintiff's claim is that since May 2021, he has not been provided with appropriate healthcare services for a hand injury. In evaluating plaintiff's confusing complaint and amended complaint, the Court stated that "[h]is amended complaint is short on facts and long on legal argument" and that "Plaintiff abandoned the factual recitation the Court had already indicated supported an inference of deliberate indifference in favor of legal argument." Opinion at PageID.149. The Court further stated that:

> Plaintiff did not identify the persons against whom the Court had already determined that Petitioner [sic] had alleged sufficient facts. Instead, he described the role each played in his care. He describes the RGC personnel as healthcare providers who "responded to healthcare request[s], misread the x-rays taken on May 18th, 2021, misdiagnosed the Plaintiff[']s dislocated finger for tenosynovitis on May 20th, 2021 and further denied the Plaintiff proper medical treatment for a serious medical need . . . ." ([Am. Compl. ECF No. 15,] PageID.111.) Plaintiff lists two "Doe" defendants from RGC: Defendant #2, a "John Doe" registered nurse and Defendant #3, a "Jane Doe" doctor/medical provider.1 (*Id.*, PageID.104.)
>
> Plaintiff also describes the individual at the MDOC Bureau of Health Care Services who, during the time Petitioner was housed at DRF, denied the request for occupational therapy. (*Id.*, PageID.111.) With regard to that individual, however, rather than describing another "Doe" defendant, Plaintiff names the Bureau of Health Care Services. (*Id.*)

Opinion at PageID.149-150.

The Court identified Marti Kay Sherry as the appropriate defendant because the complaint seeks injunctive relief from the MDOC Bureau of Health Care Services:

> While the Eleventh Amendment generally prohibits lawsuits against states (and a state's departments and the internal divisions of those departments) in federal

---

[1] The Court docketed plaintiff's complaint on November 16, 2022 (ECF No. 1). Defendant Sherry states that under the prison mailbox rule (*see Houston v. Lack*, 487 U.S. 266, 276 (1988) and *Scott v. Evans*, 116 Fed. Appx. 699, 701 (2004)), the complaint was filed on September 28, 2022, the date that plaintiff signed the complaint and presumably delivered it to corrections officers for mailing. *See* Defendant's Brief (ECF No. 45, PageID.221).

2

>court, under *Ex parte Young*, 209 U.S. 123, 155-56 (1908), a plaintiff can sue state officers in their respective official capacities for prospective injunctive relief. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). When challenging a state policy, the officer sued must "have some connection" with the policy's enforcement or execution. *Ex parte Young*, 209 U.S. at 157. Even when a function is administered on a day-to-day level by local officials, a state officer's supervisory authority can still make her a proper defendant under *Ex parte Young. E.g., Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048-49 (6th Cir. 2015).
>
>Although an official capacity suit against a state officer in the officer's official capacity under *Ex parte Young* would not permit Plaintiff to seek damages, it would allow prospective injunctive relief. Plaintiff specifically seeks such relief: "Plaintiff requests that this Court grant the following relief . . . issue an injunction requiring that Defendants prison medical providers provide occupational physical therapy to Plaintiff as requested by the outside hand specialist . . . ." (Am. Compl., ECF No. 15, PageID.113.) Although that request for relief is not viable against the Bureau of Health Care Services, it could state a claim against an individual officer of the Bureau in that officer's official capacity. <u>Accordingly, for purposes of Plaintiff's claim for prospective injunctive relief, the Court will direct the Clerk to substitute Marti Kay Sherry, Administrator of the Bureau of Health Care Services, in the administrator's official capacity, in place of the Bureau of Health Care Services.</u>

*Id*. at PageID.152-153 (footnote omitted) (emphasis added).

>The Court sorted out plaintiff's claims as follows:
>
>Plaintiff raises a viable request for prospective injunctive relief that, under *Ex parte Young*, may be raised against a state officer in that officer's official capacity. <u>The Court will direct the Clerk of Court to substitute Bureau of Health Care Services Administrator Marti Kay Sherry, in the administrator's official capacity, in place of the Bureau of Health Care Services for purposes of that claim.</u> Considering the allegations in Plaintiff's original complaint, as supplemented by his allegations in ECF No. 15, the Court concludes that Plaintiff has also stated a claim against the two described, but unidentified, defendants from RGC. Therefore, this action will proceed against Bureau of Health Care Services Administrator Marti Kay Sherry, in the administrator's official capacity, as well as Unknown Parties #2 and #3, described, respectively, as a registered nurse and a doctor/medical provider at RGC.

*Id*. at PageID.156 (emphasis added).

3

For his relief against the three defendants, plaintiff asks for "an injunction that defendants prison medical providers provide occupation physical therapy to plaintiff as requested by the outside hand specialist", compensatory damages, and punitive damages.  Am. Compl. (ECF No. 15, PageID.113).

## II. Motion for summary judgment

### A. Legal standard

Defendant Sherry has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first

5

attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendant Sherry points out that plaintiff has not exhausted any claims against her. Defendant identifies one grievance which relates to the substance of plaintiff's claim, Grievance DRF-22-01-0112-28i ("112"). This grievance listed the date of the incident as December 14, 2021 and was not directed at anyone in particular. Grievance 112 (ECF No. 45-3. PageID.249). After listing the medical treatment received (x-ray, consultation with hand specialist, "operative report" and "post-op visit", plaintiff claimed that he was denied medical treatment:

> On 4-25-2021 I wrote a kite to medical explaining about dislocated finger and expressed the fact that I didnt [sic] want the finger to heal broken or dislocated. On 5/18/2021 left hand 4th digit xray results were "no signs of fracture, dislocation, osseous or joint pathology." The misreading and misdiagnosis of dislocated finger has resulted in permanent joint damage and now is affecting the [quality] of daily use and function. Please refer to medical records for 05/18/2021 x-ray results,

6

> 09/17/2021 orthopedics consultation by hand specialists, 11/17/2021 operative report, 11/30/2021 post-op visit. I am seeking relief for denial of medical treatment please refer to grievance identifier RGC21060260912E received 06-01-2021 before I must pursue civil litigation for damages, pain, and suffering.

Grievance 112 (ECF No. 45-3. PageID.249). The grievance did not address the injunctive relief demanded in this lawsuit, *i.e.*, physical therapy. Plaintiff stated that he attempted to resolve the grievance on December 10, 2021, but also made a contradictory statement that he did not attempt to resolve the grievance stating, "I requested a copy of my medical records for I was never given a first copy." *Id*. The grievance was rejected for failure to attempt to resolve. *Id*. The rejection was upheld at Steps II and III. PageID.246, 248.

Defendant Sherry contends that Grievance 112 was not properly exhausted because plaintiff did not name her at Step I and the grievance was rejected at Steps I, II and III. Defendant's Brief (ECF No. 45, PageID.228-229).

Grievance 112 does not ask for any particular relief and does not name defendant Sherry or anyone else. For this reason alone, the grievance is not properly exhausted.

In addition, defendants rejected Grievance 112 because plaintiff failed to attempt to resolve the grievance as required by PD 03.02.130 ¶¶ J.4. and Q. PageID.248. In his response, plaintiff contests the rejection of the grievance.

This is not the appropriate venue to determine whether the MDOC properly rejected Grievance 112. Here, plaintiff's Step II and Step III appeals did not contest the rejection or explain why the rejection was improper. Rather, plaintiff's appeals argued the merits of his claim referring to medical negligence, misdiagnosis related to his finger, and filing civil litigation. PageID.247. The first time that plaintiff addressed the rejection of Grievance 112 was in his response to defendant's motion for summary judgment claiming: that he could not attempt to resolve the

7

dispute because walking to Health Services to resolve it would subject him to disciplinary action; and, his kites "trying to gain an audience" to resolve the issue were denied.[2]

"Whether the MDOC improperly rejected plaintiff's grievance is not an issue for the Court." *Drain v. Burke*, No. 1:13-cv-1326, 2015 WL 1323366 at *6 (W.D. Mich. March 24, 2015) (citing *Jones v. Bonevelle*, No. 11-2242, slip op. at pp. 3-4 (6th Cir. March 30, 2012) ("[the prisoner's] argument that his grievances were improperly rejected should have been made during the grievance process, not in his present civil rights action"). This Court summarized the holding in *Jones* as follows:

> In *Jones*, the plaintiff's grievance was rejected because he did not attempt to resolve the issue with the defendant before filing his Step I grievance. He also failed to explain why he did not comply with this requirement in his Step II and III appeals. Before the district court, however, the plaintiff argued that he attempted to resolve the issue with the defendant by sending him a kite one day prior to filing his grievance, and he submitted a copy of the alleged kite in response to the defendant's motion for summary judgment. The Sixth Circuit held that the district court properly found the plaintiff's claim unexhausted because the plaintiff should have made his improper rejection argument during the grievance process rather than in his civil action.

*Bailey v. Michigan Department of Corrections*, No. 1:23-cv-57, 2024 WL 3759785 at *4 (July 9, 2024), *R&R adopted*, 2024 WL 3756405 (W.D. Mich. Aug. 12, 2024).

In summary, plaintiff did not contest the rejection of Grievance 112 in his Step II and Step III appeals Plaintiff cannot raise the issue of "improper rejection" for the first time in this

---

[2] In this regard, plaintiff stated in pertinent part:

> For the Plaintiff to attempt to walk over to Health Services without first being directed to go there by staff, the Plaintiff would've been in violation of the facility's rules and subject to adverse disciplinary action. . . .
>
> Therefore, whereas the Plaintiff had sent several Kites via the MDOC's CHJ-549 HEALTH CARE REQUEST form along with several informal Kites all trying to gain audience with the Defendant to "resolve the issue with the staff member" but ultimately being denied the chance to resolve the matter or to even speak with the Defendant or others involved in the matter.

Plaintiff's Response (ECF No. 53, PageID.274).

8

Court. *See Jones*, No. 11-2242. For these reasons, plaintiff did not properly exhaust his claims against defendant Sherry. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Sherry's motion for summary judgment should be granted.

### III.   Doe defendants

As discussed, plaintiff's lawsuit includes two unidentified "Doe" defendants: John Doe (an RN at the MDOC Health Care) and Jane Doe (a doctor or medical provider). A "Doe" defendant listed in a complaint is not a party to a lawsuit. Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), *R&R adopted*, 2016 WL 3251761 (E.D. Mich. June 14, 2016). Plaintiff filed this action in 2022. Despite having filed an amended complaint in 2023 (ECF No. 15), plaintiff has yet to identify the unknown Doe defendants. If the Court adopts this report and grants summary judgment in favor of defendant Sherry, then there will be no other party remaining in this lawsuit. Under those circumstances, plaintiff cannot maintain a lawsuit against two unserved, unidentified "Doe" defendants, and this Court should dismiss plaintiff's lawsuit without prejudice.

### IV.   Recommendation

Accordingly, I respectfully recommend that defendant Marti Kay Sherry's motion for summary judgment (ECF No. 44) be **GRANTED**, that plaintiff's claims against "John Doe" and "Jane Doe" be **DISMISSED without prejudice**, and that the lawsuit be **terminated**.

Dated:  July 24, 2025 /s/ Ray Kent
RAY KENT
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).